UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **THOMAS R. HARDEE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 21-641** |
| **CMH HOMES, INC., ET AL.** | **SECTION D (3)** |

### ORDER AND REASONS

Before the Court is Defendants Southern Energy Homes, Inc.'s and CMH Homes, Inc.'s Motion to Stay Pending Arbitration.[1] No opposition to the Motion has been filed. After careful review of the Motion and supporting memoranda, the record, and the applicable law, the Court grants the Motion.

### I. FACTUAL BACKGROUND

This dispute arises from the installation of a purportedly faulty roof on a manufactured home. The following facts are drawn from Plaintiff's state-court Petition.[2]

In June 2016, Thomas Hardee purchased a new manufactured from Southern Colonel Homes of Laurel.[3] He alleges that the home was manufactured by Southern Energy Homes, Inc., which is a subsidiary of Clayton Homes (a/k/a/ CMH Homes, Inc.).[4] Over the next four years, Hardee had various issues with leaks in the

---

[1] R. Doc. 8.
[2] *See* R. Doc. 1-1.
[3] R. Doc. 1-1 at 6 ¶ I.
[4] *Id.* at 6 ¶ III.

manufactured home.[5] After a particularly hard rain in 2020, Hardee filed a claim for water damage with his insurance company, which determined that the water damage was caused by improper installation of the roof.[6] Plaintiff contacted the manufacturer, CMH Homes, who said the roof was installed improperly, and that Hardee should therefore contact Southern Colonel.[7] Plaintiff obtained an independent inspection which determined that the leaks were caused by poor installation and workmanship of the roof.[8] Hardee sued Southern Colonel Homes, Southern Energy, CMH Homes, and others in Louisiana state court, alleging violation of the New Manufactured Modular Home Warranty Act and various other Louisiana laws.[9]

Southern Energy and CMH Homes now move to stay this action pending arbitration.[10] Defendants argue that when Hardee purchased his manufactured home, he entered a binding arbitration agreement. That agreement stated:

> You, We, and the Dealer (the "Parties") agree to submit to binding arbitration any and all claims and disputes (including contract, tort, common law, statutory and regulatory claims) arising from or relating to the Contract, the Home, the sale of the Home, the design and construction of the Home, the financing and insuring of the Home, all warranties and service contracts offered with the Home, and any other disputes among the Parties.[11]

---

[5] *Id.* at 7 ¶¶ V-VI.
[6] *Id.* at 7 ¶ VIII.
[7] *Id.* at 7-8 ¶¶ VIII.
[8] *Id.* at 8 ¶ IX.
[9] *See generally* R. Doc. 1-1.
[10] R. Doc. 8.
[11] *See* R. Doc. 8-2 at 4.

Defendants argue that the agreement is valid and clearly covers the scope of the dispute. Defendants further argue that no federal statute or policy renders Hardee's claims nonarbitrable, and that Hardee's claims against CMH Homes are arbitrable even though CMH Homes did not sign the arbitration agreement because of the doctrine of equitable estoppel. Neither Hardee, nor any other party, has filed a response to the Motion and, as such, the Motion is unopposed.

## II. LEGAL STANDARD

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), governs the enforceability of arbitration agreements in federal court. The FAA provides that an arbitration agreement in writing "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[12] Additionally, a party to an arbitration agreement "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[13] "The underlying purpose of the FAA was to create a policy in favor of arbitration, such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"[14] "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[15]

---

[12] 9 U.S.C. § 2.
[13] 9 U.S.C. § 4.
[14] *Iheanacho v. Air Liquide Large Industries U.S. L.P.*, Civ. No. 19-532, 2020 WL 3451689, at *2 (M.D. La. June 24, 2020) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, (1983); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 360 (5th Cir. 2013)).
[15] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citation omitted).

Under Section 3 of the FAA, if a federal court finds the dispute is subject to arbitration, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."[16] The Fifth Circuit has construed this provision as providing for a mandatory stay of litigation.[17] This Court recently recognized, however, that the Fifth Circuit has not provided clear guidance regarding whether claims should be dismissed or stayed pending arbitration.[18] In *Alford v. Dean Witter Reynolds, Inc.*, the Fifth Circuit held that, "The weight of authority clearly supports dismissal of the case when *all* of the issues raised in the district court must be submitted to arbitration."[19] However, the Fifth Circuit subsequently clarified the language in the *Alford* opinion, noting that, "*Alford* held merely that dismissal was not an abuse of discretion," but that it "did not hold that dismissal was required . . . much less that failure to dismiss would have been an abuse of discretion."[20] Thus, district courts have discretion to stay or dismiss a case when all of the claims asserted are subject to arbitration.[21]

---

[16] 9 U.S.C. § 3.
[17] *Waste Management, Inc. v. Residuos Industriales Multiquim, S.A. de C.V.*, 372 F.3d 339, 342 (5th Cir. 2004) (*quoting* 9 U.S.C. § 3).
[18] *Hanberry v. First Premier Bank*, No. 2:19-CV-00898, 2019 WL 4415267, at *7 (E.D. La. Sept. 16, 2019).
[19] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (citing *Sea-Land Service, Inc. v. Seal-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D. Puerto Rico 1986); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988) (expressly holding that 9 U.S.C. § 3 does not preclude dismissal); *Hoffman v. Fidelity and Deposit Co. of Maryland*, 734 F. Supp. 192, 195 (D.N.J. 1990); *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D. Pa. 1991)) (emphasis in original).
[20] *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 311 n.9 (5th Cir. 2003) (citing *Alford*, 975 F.2d at 1164).
[21] *Alford*, 975 F.2d at 1164; *See Fedmet Corp. v. M/V BUYALYK*, 194 F.3d 674, 676 (5th Cir. 1999) (interpreting *Alford* to mean "district courts have discretion to dismiss cases in favor of arbitration").

In determining whether a party should be compelled to arbitrate, the Court's inquiry consists of three steps.[22] First, the Court must determine whether a valid agreement to arbitrate exists between the parties.[23] The Court must then determine whether the dispute in question falls within the scope of the arbitration clause.[24] If the first two steps are answered affirmatively, the Court must determine "whether any federal statute or policy renders the claims nonarbitrable."[25]

## III. ANALYSIS

The Court begins by determining whether there is a valid agreement to arbitrate between the parties. Here, such an agreement plainly exists. Hardee signed a detailed arbitration agreement.[26] Such an agreement is a binding contract under the Louisiana or Mississippi law.[27] Under Louisiana law, the formation of a valid contract requires: (1) capacity to contract; (2) mutual consent; (3) a certain object; and (4) a lawful purpose.[28] Each of those elements is present here, and neither Hardee nor any other party has suggested that the contract is not valid. Although

---

[22] *Hill v. Hornbeck Offshore Services, Inc.*, 799 F. Supp. 2d 658, 661 (E.D. La. 2011) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).

[23] *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007) (quoting *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)) (internal quotation marks omitted); *Hill*, 799 F. Supp. 2d at 661 (citing *Gaskamp*, 280 F.3d at 1073).

[24] *Conegie ex rel. Lee*, 492 F.3d at 597 (quoting *Will–Drill Res., Inc.*, 352 F.3d at 214).

[25] *Hill*, 799 F.3d at 661 (quoting *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009)) (internal quotation marks omitted); *Washington Mut. Fin. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004).

[26] R. Doc. 8-2 at 4-5.

[27] The arbitration agreement does not contain a choice-of-law provision, and there is no analysis from any party regarding the applicable choice of law for contract formation. Although Defendants cite Louisiana law, the Court notes that Mississippi law may govern a contract formed in Mississippi between a Louisiana citizen and a Mississippi company. Here, this distinction is inconsequential because both Louisiana law and Mississippi law point to the same outcome. *See Woodruff v. Thames*, 143 So. 3d 546, 554 (Miss. 2014) (outlining elements of contract largely similar to those under Louisiana law).

[28] *Wallace v. Shreve Memorial Library*, 79 F.3d 427, 430 n.4 (5th Cir. 1996) (citing *Keller v. Sisters of Charity*, 597 So.2d 1113, 1115 (La. App. 2 Cir. 1992); La. Civ. Code arts. 1918, 1927, 1966 & 1971).

CMH Homes did not sign the arbitration agreement, Plaintiff's claims are "allegations of substantially interdependent and concerted misconduct" against all Defendants, and therefore equitable estoppel requires arbitration of Hardee's claims.[29] Accordingly, the Court finds the first step to compel arbitration satisfied.

The Court next considers whether the dispute in question falls within the scope of the arbitration clause. The arbitration clause here has a broad scope, requiring arbitration of "any and all claims and disputes (including contract, tort, common law, statutory and regulatory claims) arising from or relating to the Contract, the Home, the sale of the Home, the design and construction of the Home. . ."[30] The instant dispute plainly falls within this broad language, as it is directly related to the manufactured home, the sale of the home, and the design and construction of the home. Accordingly, the Court finds the second step to compel arbitration satisfied.

Finally, the Court considers whether there is any federal statute or policy that renders these claims nonarbitrable. No party has identified any federal statute or policy which would prevent arbitration of these claims, nor has the Court determined any such policy on the evidence before it. The Court finds the third and final step to compel arbitration satisfied.

In sum, the Court finds that there was a binding arbitration agreement which covers Plaintiff's claims, and that no federal statute or policy prevents arbitration of those claims. Accordingly, the Court must compel arbitration. Because Defendants seek a stay of this action pending arbitration, rather than outright dismissal of

---

[29] *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000).
[30] R. Doc. 8-2 at 4.

Hardee's claims, the Court will exercise its discretion to stay this action pending arbitration.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Stay Pending Arbitration is **GRANTED**. In light of the Court's decision to stay this matter pending arbitration, Plaintiff's *Ex Parte* Motion for Voluntary Dismissal of Defendant Regional Enterprises, LLC d/b/a/ Laurel Home Center[31] is **DENIED**. Plaintiff may reurge this Motion should this matter be reopened.

**IT IS FURTHER ORDERED** that the Clerk of Court **CLOSE** the above-captioned civil case for administrative and statistical purposes, pending further order from the Court. The Court shall retain jurisdiction and the case shall be restored to the trial docket upon motion of a party if circumstances change, so that Plaintiff's claims may be heard to final disposition.

New Orleans, Louisiana, May 28, 2021.

_____
**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[31] R. Doc. 12.